Good morning, Your Honors. My name is Kimberly Jansen and I am here today on behalf of the Philadelphia Indemnity Insurance Company. Good morning, Your Honor. Jay Judge and I'm here on behalf of Indiana Insurance Company. All right. We've allotted 30 minutes for argument in this case and that time will be equally divided. The appellant may reserve time for rebuttal. We can be somewhat flexible with that time. There's only one case on the call this morning, so with that, you may proceed. All right. Thank you. Oh, one other thing. Judge Taylor is unable to be here today. He will listen to the oral arguments and participate in the case when we resolve it. Okay. All right. There you go. And I would like to reserve about three minutes for rebuttal. This case is coming before you on appeal on an order granting a summary judgment in favor of the plaintiffs and against my client, Philadelphia, on cross motions for summary judgment addressing a duty to defend under two insurance policies, one a business auto policy and the other a contingent and excess liability policy. This court has consistently held in a number of cases that two requirements must be satisfied before an insurer's duty to defend will be triggered. The first is simply that the action must be brought against an insurer. And then the second is that the allegations of the underlying complaint must disclose the potential for policy coverage. Now, the trial court's decision in this case rests on two fundamental errors under the standard. The first, simply the trial court skipped right over the actual insured requirement. She did not address the threshold question of whether Kugel and Pangallo were actual insured under either of Philadelphia's two policies. There wasn't a third party complaint filed here against? There was earlier. And there was some information disclosed in there which could conceivably show coverage? It does not. The information that was in that third party complaint brought by these plaintiffs against Chicago Truck Leasing, which is the owner of the vehicle, does not disclose the possibility for coverage. But more importantly, it does not provide information, it does not demonstrate that they're actual insureds under the contract. The actual insured requirement, it's important to keep it distinct from the potential for coverage prong of the two-part test. Because it is, it rests on fundamental Hornbook contract law. You cannot sue to enforce a contract unless you are a party or an intended third party beneficiary to the contract. So while the potential for policy coverage prong can rest on possibilities and probabilities and maybes and mights, when we're talking about the actual insured requirement, that's simply a requirement with respect to standing to bring a contract action, that can't be based on potential and probability and might. You cannot owe a duty to someone under a contract if you might have a contract with that person. You can only owe a duty if you actually do have a contract. So the actual insured prong requires actual evidence that they are actually insured. Now that third party complaint brought by the Indiana and Pangallo and Kugel against Chicago Truck did suggest that the truck involved in the accident was owned by Chicago Truck Leasing. But that alone is not enough to indicate that it falls within. Well, what about those allegations along with the State Farm case? Isn't that enough to say, well, you know, these parties were driving with permission of Chicago Truck Leasing, so these people are permitted users and under State Farm, there's a possibility of coverage here and based on your obligation to provide a defense. That's an excellent question because that is indeed their strongest argument for trying to establish that they are actual insureds under the contract, is to rely on this omnibus permissive user coverage under State Farm and under the statute. The problem for them with that argument is that omnibus coverage and permissive user coverage only applies to a permissive user of a covered vehicle. And it's undisputed in this case that this is not a covered vehicle under either policy. So in order to get to that argument to support their claim, they would have to show that this vehicle involved in this accident was actually one of the covered vehicles. But that would go to you actually paying out damages. In this complaint that we have, it doesn't reveal whether this was a covered vehicle or not a covered vehicle. That's absolutely correct. And therefore, that seems to me to perhaps trigger an obligation to defend. Well, that's in fact the second problem with the trial court's decision is relying on this theory that the duty to defend is triggered because the complaint doesn't exclude the possibility of coverage. The fact that it doesn't clearly exclude coverage isn't enough. The complaint must actually disclose facts that raise the possibility for coverage. And they simply do not in this case. The underlying complaint in this case, the Donovan complaint, alleges simply that Pangallo on behalf of Kugel was driving, quote, a certain motor vehicle. That unquestionably is not sufficient to raise the possibility of coverage. It's certainly not sufficient to establish that either of these parties are in fact actual insurers under the underlying insurance policy. The third party complaint, in addition, other than simply the fact that it doesn't provide sufficient information to raise the possibility of coverage, the information therein is also information solely provided by the claimants in this case, by Pangallo and Kugel and Indiana Insurance Company. And under the Shriver decision, which I've cited in my brief, the true but unpleaded facts doctrine does not, cannot rely on information that is solely provided by the claimants under the insurance contract. And that makes sense. You can't trigger a duty to defend simply based on information that an interested party plaintiffs in this case, and they can allege anything they want in a third party complaint to trigger a duty to defend. The insurer's duty cannot rely on information, which may be deliberately or carelessly or simply because it's unnecessary to the complaint, incomplete, that is provided solely by the person trying to trigger a duty to defend. Under the actual insured prong of the two-part test, the duty to defend arises solely based on the insurance contract and therefore is owed only to the actual insured or the actual third party beneficiary to the insurance contract, an intended insured. And this is where the trial courts and the plaintiffs' reliance on the Moll decision and the Chandler v. Doherty decision is misplaced. In both of those cases, the fact that the claimant was an actual insured was not in dispute. In Moll v. Holt, the mom was the policyholder, the son who was being sued was a resident of her household, and the underlying insurance contract specifically in its definitions provided that an insured would include any resident of the named insured's household. No dispute that we had an actual insured in that case. Chandler v. Doherty. Otis Doherty was the named insured, and he was also the party seeking a defense. He was the named party in the action against him. Again, no issue in either of those cases with respect to the actual insured. Where the actual insured problem does come up is in a number of cases before this court in the first district. Probably the most thorough analysis that I found was in the West American Insurance v. J.R. Construction case. In that case, suit was brought against J.R. Construction. West American denied a defense saying, hey, they're not an additional insured under our policy. They're not an actual insured. This court went through a lengthy, extensive, comprehensive analysis of the actual insured problem first before it ever looked at the potential for policy coverage. In fact, the court looked at quite a bit of information that was not part of the underlying complaint in that case. It looked extensively at customs and practices and the various insurance certificates and policies and so forth. Would your argument be any different here today if the vehicle itself was listed as one of the covered vehicles? If the vehicle involved in the accident had been listed as one of the covered vehicles and if, you know, I guess assuming that the plaintiffs were in fact permitted users, then under the omnibus provisions of State Farm and of the statute and of the business auto policy itself explicitly, yes, then they would be actual insured because a permissive user of a covered vehicle is insured under the policy. So the epitome makes much in their brief about going outside the four corners of the underlying complaint. Would you comment on that? Sure. First, I would distinguish again between the actual insured prong and the potential for coverage prong. Do you think they do that or do they ignore that? I don't think they do. I think they're arguing it. In fact, I don't think in their brief for any of the issues that they really separate out actual insured and potential. They would like this court to adopt a rule that being a potential insured is enough to give you a right to enforce an insurance policy with a duty to defend. And I don't think that's the law in this state. But so yeah, they don't really separate it out. I do think that the issue of whether you can look at extrinsic evidence or not should differ depending on whether or not we're looking at the actual insured prong or the potential for policy coverage prong. Because again, the actual insured prong of the test is simply who has standing to enforce the contract. It doesn't make sense to hold an insurer to the allegations of a complaint in determining whether or not the party seeking a defense has a right to enforce the contract. There's no reason to limit it to the specific allegations of the complaint when we're looking at whether or not this is an actual insured who has standing to raise this contract issue. So it does make sense to, I'm sorry. Well, in the context of whether or not there's a duty to defend, do we even get to extrinsic evidence unless you file a cause for declaratory judgment? In other words, if you don't, well, it appears that there may be coverage. There's allegations that it's a third-party complaint, that there's a possible permissive user, and you don't come in on the declaratory judgment to say we don't have a responsibility. Well, and again, I would argue that, and I'll make this point in two parts. I would argue that extrinsic evidence should come in regardless of the posture when we're looking at the question of the actual insured. Do they have standing to even be presenting this contract question at all? There's no reason that they should have a right to enforce a contract that they're not party to simply because of the allegations of the complaint. What cases do you have where, in the absence of a declaratory judgment action, you can bring that in to make a determination on the right to, on the obligation to defend? We do, in fact, have a declaratory judgment. We did, in fact, bring a contract. Well, that was after an alleged, that was already after the alleged failure to defend had taken place. Well, the question of whether or not we're stopped to raise policy arguments, that's a question of estoppel. Now, that doesn't even come into play until you decide the duty to defend issue. So these cases don't say that, oh, well, you brought it too late. You're estopped from raising all this stuff. You don't get estopped until after the court decides you've reached the duty to defend in the first place. That's the issue that we're addressing today. So we really can't bring estoppel in sort of circular catch-22, you know, to argue your duty to defend so you've got a duty to defend. It just doesn't, it can't work that way. The cases talk a lot about how you have two choices when you receive this tender, and one choice is to defend with a reservation of rights, or the other choice is to file a declaratory judgment action. But that's really incomplete, isn't it? Because there's a third choice that you have, and that is that you could just send a letter denying coverage if you feel there's no coverage. Right. And you're either right or you're wrong. If you're wrong, it's not good for you, but if you're right, you're right, right? Correct, yeah. It seems to me that, go ahead. Well, I was just going to say that, you know, those two choices, the reservation of rights or the declaratory action, if you don't choose those, then you're stopped from denying your policy defenses if you had a duty to defend. So until, on the threshold question of duty to defend, those don't come into play at all. Whether or not you filed a declaratory action, whether or not you proceeded under a reservation of rights, that doesn't affect whether or not you owed a duty to defend in the first place. Your policy has provisions where newly acquired vehicles can be covered even if they're not listed. Is there anything in the record to detail how this particular vehicle came into the ownership of Chicago Truck Leasing? My understanding is that this truck had been in service and owned by Chicago Truck Leasing for a very long time, that Kugel Commission had been leasing the truck for quite some time under a lengthy written lease, which would have put it under the contingent and access policy, except that three days prior to the accident, it was taken out of service, removed from that policy, removed from the covered vehicles under the business auto policy, and then was simply rented out, like, hey, we need a truck on an emergency basis, on an oral agreement for one day to Kugel and Pangolos. This is not like a newly acquired vehicle. This is a vehicle that had been covered, that Chicago Truck Leasing said to Philadelphia, take it off of our coverage, and then Chicago Truck Leasing went on and rented it out for a day on an oral agreement to the plaintiffs, to Pangolo and Kugel. So on the day of this incident, nobody covered this truck? That appears to be, and there is some question, and I know counsel will argue that Indiana doesn't have an obligation to provide coverage. That's not really pertinent to our issues today. So it's possible that there was some coverage under Indiana's policy, but it's possible that Chicago Truck Leasing had a truck that it owned that it didn't bother to get insurance coverage for. But simply because they made it. This is just a mistake, and your position would be that, you know, that Chicago Truck Leasing, being in this business that they're in, they should have had some type of protocol that if they do take a truck for a day, that they get on the phone with their insurance company. They certainly should have done something, absolutely. But the fact that they didn't doesn't mean that just because we insure a bunch of other Chicago Truck Leasing trucks that we're now responsible for whatever trucks they own that they haven't told us about, that, you know, they might have, for all I know, they could have 200 trucks sitting in their lots that they never got insurance for. Under the rationale that the trial court applied for this, we would be responsible for providing a duty to defend to anyone driving any one of those cars. What was the trial court's rationale? She found, based on the allegations of the complaint, that the allegations of the complaint failed to exclude the possibility of coverage. And that is not the correct standard. The correct standard, and Murphy is strong on this, federal insurance versus economy, FIRE, strong on this, the correct standard is that the complaint needs to affirmatively allege facts sufficient to raise the possibility of coverage. But you really think that that's just the second part of the analysis anyway, right? That is just the second part, yes. You think that the question of whether it's one of those two formulations, either you need to exclude it or you need to affirmatively show it, for there to raise the duty to defend is really still just the second part. That's really the second part. Because that doesn't have anything to do with is there or is there not insurance. Exactly, exactly. So in this case, factually, everybody agrees that they are not, in fact, insurance. There's no question that this particular vehicle was not covered under either policy. And there are only additional insureds if the vehicles are covered. So their argument in the trial court's decision would rely entirely on a finding that it's enough to enforce an insurance policy if you can show just enough to suggest that you might possibly be an insured, might possibly be a party to the contract. And that's simply not consistent with any Illinois whatsoever on the enforcement of a contract. If this Court has no further questions. All right. You can reserve some time before we vote. Mr. Jaskier. I would just like to start out and give you one case that I think will end this case entirely. I probably should have done it in my briefs. There's a case, Constant Products v. Liberty Mutual. It's 401-ILF-3rd-83, 2010 case. Justice Carnesas wrote the opinion. And this shows when you may deny coverage. Generally, when we look at a complaint, we say there's the potential for coverage unless it's clear that there's no possibility of coverage. In this Constant Products, what happened is a driver driving a scavenger trunk got in the truck and drove it. What happened is the garbage collector got out of his truck and he was in front of the garbage bins and the truck rolled in. And some man comes along and he jumps in the truck and the guy who was pinned against his bin said, don't drive it, don't drive it, because it had an unusual stick shift. And the guy drove it anyway. He said three times, don't drive it, don't drive it, don't drive it. He drove it anyway and crushed the guy. And the court held, as a matter of law, they filed a verified complaint. So they've pleaded no permission in a verified complaint. The court said this is a judicial admission. It absolutely takes the case out of coverage. Liberty Mutual owes no coverage. In this case, you can't look at the complaint. It just says it's a motor vehicle, a certain motor vehicle. So we can't tell one way or another. Philadelphia comes in and Philadelphia says, well, hey, we have no idea who these people are. But remember when it did its denial letter of February 7th, it says, hey, we looked into this. Kugel has a lease where Chicago truck leasing are insured. And under that lease, Indiana is supposed to be covering us. We don't cover this. So they're pretending like, well, how do we know if there's permission? It's like, wait a minute. Chicago truck leases trucks to Kugel. They knew when they got the complaint that Kugel Commission is somebody they lease trucks to. So it isn't like, well, we don't know them. We can't tell if there's permission. So what I would say is this. I think Philadelphia, and I sent them a letter. I don't know if you saw that in the file. But I sent them on February 11th in 2004 and February 22. And I said, hey, look, you guys, I know you're an out-of-state company. You don't know the law in Illinois. Here's the law on State Farm. It looks to me, I'm not going to tell you what to do, but it looks to me like you ought to look at this case. As the owner of the vehicle, you owe permitted user coverage to anybody using a truck with permission. And I would have thought, I'm an old claim adjuster and a claim supervisor, if I got that letter, I would have called up my lawyer and said, hey, look, this lawyer is sending this letter. Is this good or bad? Is he right or is he wrong? But Philadelphia, Kevin Gray, the supervisor, thought, and I guess under Philadelphia law his deposition was taken, he thought he could look outside the complaint. And he did. He admitted that in his deposition. We put it in our brief. They also responded to our request to admit facts. Indiana did request to admit facts. And they admitted. We went outside the four corners of the complaint. We went and we got the police report. And the police report says this is a 1995 international truck. And then they looked at their policy and said, hey, it's not on the policy. Well, you know, the reason it was not on the policy was because it was leased and Indiana covered it. Now here's Philadelphia's insured Chicago truck leasing and Philadelphia saying we don't owe coverage. Three days before this accident, Chicago truck goes to the Kugel Commission and says, hey, we're taking the 1995 international truck off of the policy, adding a new one, a 2005 truck. Tell your insurance company, Indiana, take this policy off, take the 1995 truck off, add the 2005. So that's three days before the accident. The date of the accident, Kugel calls up Chicago truck and says, hey, Saturday's a busy day. Kugel does poultry stuff. They do Popeye's, deliver chicken and stuff like that to places. We need an extra truck. Can we get one? So Chicago truck sends over an extra truck. So it happens to be the 1995 international that got returned. And it's on a one-day oral lease, so Indiana doesn't cover it. I think Philadelphia covers it for two reasons. As your Honor just said, they have 30 days to tell the company. And I think if you look at the policy, their policy, the business auto policy, I think 51, 52, 53, around those pages in the record, it will say you have 30 days to notify us if you have an additional auto you want covered. My feeling would be, and this wasn't really argued below, but my feeling would be when you look, if it's in the record, it's in the record. If you look at that, when they take this vehicle off, obviously Chicago truck wants it insured. And they've got 30 days to say, hey, now it's off of the lease, put it on our policy. So I think it's automatically insured. By second token, under State Farm, if you're the insurance company of this owner of this automobile, you have to provide coverage for that owner and for any permitted user. So I think for two reasons there would be coverage, you know, under the policy. And I think they disagree with you on that. Oh, they do. They would say we only have to provide coverage to permissive users for covered vehicles. Right, right. And I'm saying, one, it's pretty clear you can't say you're not a permissive user because nothing in the complaint takes it out of permission like the kinds of products. Secondly, I'm saying, you're saying it's not a covered auto, but the only way you can tell it's not covered, if you look at that complaint, it's a certain motor vehicle. That means there's potential coverage until you take it out. How do they take it out of coverage? They go and get the police report. And the police report says it's a 1995 International. Here's the serial number. Now they've got the police report. They're outside the four corners of the complaint. They're looking at the policy and say, oh, we've got 100 cars on here and it's not in here, so you're not covered. You can't go outside the complaint and say that it's not covered. When you look at that complaint, if there's potential coverage, and there is, because it doesn't take it out. The complaint must clearly show no possibility of coverage to deny coverage. And the reason for that, I think, is this. The court says, look, under the eight corners rule, if there's a duty to defend, you look at the four corners of the complaint, you look at the four corners of policy. If there's any possibility of coverage, you've got to defend. And that's a fair rule. If you don't, if you go outside or if you deny coverage wrongly, you're stopped to assert any of your coverage defenses. On the other hand, do this. Let's go down that road, though. I'm sorry. I'm sorry, but let's go down that road. Let's say you're right about the fact that they can't. I'm not sure I accept that, but let's say that you're right, that they can't look outside the complaint to see whether it's a covered auto. And let's say they deny coverage, and you say that they shouldn't have done that. But in the end, in the final analysis, you have to look to see if they wrongly denied coverage. Right? And if ultimately the facts do bear out that it's not a listed vehicle, then can you say that they wrongly denied coverage? Well, I think the question step before that is, are you looking at the complaint? Does the complaint take it out of coverage? You can't just say, I'm going to look at my policy on every case and see if there's coverage. You've got to look at the complaint. If the complaint shows any possibility of coverage, and that's why I say if you look at constant products, it's perfect. Because it says, here's what you need to do to deny coverage. You can't look outside. I understand what you're saying. You say, if they look outside and there's no coverage, they're okay. But I'm saying, no, they can't look outside. They've got to look at the complaint unless the complaint clearly, like in constant products, says there's no possibility of coverage. So that complaint would have to say, it would have to specify a vehicle. If that complaint pleaded in 1995 international, they could look at their policy and say, we don't cover that. If it pleaded any other vehicle, and we cited Chandler v. Doherty and Moll v. Hope, which were the insurance company, look at the policy, and they said, look, the accident involved a Chevrolet. Your policy only covers a Dodge, and I'm wrong on the kinds of cars. There's potential coverage. That's why, because that could be a temporary substitute automobile. It doesn't have to be the one named on the policy. So I agree with what you say. I understand what you're saying. You say, if they look at the policy and there's no coverage for this vehicle because it's not on there, they can deny coverage. But we have to go a step before that and say, when they look at the complaint, can they tell from the complaint this 1995 vehicle is not on there? If the complaint said it was a 1995 international truck and they looked at the policy and said, we don't cover it, now they've got a ground to deny coverage. I believe Ms. Jansen is making an interesting argument following up on that question. This is basically saying that she won't stipulate to this, but assuming that they should have provided a defense, but at the end of the day, failure to provide a defense, according to the Walsall and Elko case, merely says that you're stopped from asserting defenses. But if you should have provided a defense, based on the four corners of the complaint, and at the end of the day it turns out that this policy does not actually cover the vehicle and there is no coverage, then there's no sanction at all. And they gambled, but they won at the end of the day. So what you're saying is that if they wrongly denied it, but there really is no coverage. There's no policy. It's not a covered vehicle, therefore. So they can't cover anything because they're not a stop to do something that doesn't exist in the first place. Yes. So they're saying the lack of coverage, which is what they're asserting here, stops them. But they wouldn't cover the judgment. Yes. Well, even cover the defense because we can't impose – maybe I'm reading this case incorrectly. It's Elko. It says we can't impose coverage where there's – Elko is really a late notice case. Yes. And they just said you can't deny coverage. Before you could deny coverage on late notice. Supreme Court said you can't deny coverage. But it also says we can't put – You can't make coverage that doesn't exist. Yes. I don't know. I haven't thought about what you said, but I would tend to agree. If there's no coverage, you can't create coverage out of nothing. So in the end, if they wrongfully denied and they owe a defense, I think they've got to pay for the defense. But if there is no insurance policy, there's nothing that they could pay with. So I haven't thought about what you said. It's an interesting argument, and I don't know if I'm smart enough to know the answer. I'd like to just add one thing before I run out of time. One of the things I think is important in these two rules, and there's two rules on the duty to defend. It's the eight corners rule that's looking at the complaint, four corners of the complaint, four corners of policy. You have to defend. You can't look outside of it. Second rule, if you file a declaratory, you get to look outside of the complaint. You can do extrinsic evidence. You put in whatever you want. Why? And I think the reason is simple. It's because when you go to the court, you're asking for a judge to make a decision. When you deny out here, you're unilaterally, the insurance company is unilaterally making the decision. And now if the insurance company is a good guy and then goes to the court and says, we want you to tell us what to do, then you get the benefit of all of your arguments. Nothing is waived or nothing is stopped. And I would liken it to this. It's like a basketball game. The referee is there to make sure the game is played fair. It calls fouls. So when you go to court, the judge is the referee. He makes sure the game is being played fair. He calls fouls. He says what evidence goes in. He's like a filter. Out here, when the insurance company denies it, it's like, and I don't know if you played basketball when you were young, but we played in the CYO games and stuff, and we didn't have a ref, so you call your own fouls. Well, anybody who's been in a game where you're calling your own fouls know that all the fouls don't get called. And that's why I think you're stopped over here. I think what you said was an interesting thing. I haven't thought about that. I think it's real clear that Philadelphia knew from the beginning that there's something here. You had this agreement with Chicago truck leasing. You had this coverage. You looked at it. You said, Indiana owes the coverage. Well, when they looked, it's one of the reasons you can't look outside the complaint. When they went outside the complaint, they found out that Chicago truck had an agreement, a truck lease agreement, with Kugel Commission. And they said, well, under that lease agreement, Kugel Commission, Indiana's company, owes the coverage. And they denied coverage on that ground. And it's like, well, wait a minute, you guys. You went outside the four corners of the complaint, which you shouldn't have done, and on top of it, you were wrong. Because although there was a lease agreement, it was canceled three days before this accident. So by going outside, you committed a multiple mistake. And if you'd have done what you should have done, I think if Philadelphia really thought they had no coverage, they defend under a reservation file declaratory, put all this evidence in, and maybe they get out of coverage. But I think they have to be, and penalize is the wrong word. And I just say one thing in this regard. I've done insurance all my life. I was an adjuster and claim supervisor. I think these people, I'm not after Philadelphia or their lawyers or anything. I think they're good people. They all try to make tough decisions. As you know, you're going to make a decision in this case. It's not always easy to understand. So I think they're good people. They tried to do the right thing. We tried to help them along by giving them the law. They made a mistake. And they're in business. They know the mistake they made, all they had to do was go to a lawyer and say, hey, tell us, is this right or wrong? So with that, if there's any questions, I'll answer them. I think I'm starting to go over my time. All right. Thank you, Mr. Chairman. Thank you very much. Ms. Jensen. Thank you. I'll do my best to keep this brief. First, with respect to counsel's argument that he thinks maybe this is an automatically insured situation under some separate provision that he admits that has never been raised below, I would argue that such a position has been forfeited. An argument that wasn't raised below is not something that we can fairly be held to respond to for the first time in the middle of oral argument. So I would ask this Court to disregard that argument as not properly. Something just jumped into my head. Maybe I should have asked Mr. Judge before he sat down. You know, it seems to me that if we take the position that you can't determine if there's an insured, you can't look outside the complaint, I mean, you could invite certain mischief because what could happen is, you know, I mean, somebody's in an accident and they know what kind of truck it is, although I'm not sure how they would know that the truck is not listed, but maybe they did. And instead of saying what the – because if they would have said in the underlying complaint – I'm sorry to disjointed question. If they would have said in the complaint, 1995 truck, it's right there, no coverage. So instead of saying that, they just say, well, a truck. Doesn't that invite a certain amount of mischief, you know, in terms of like, well, let's not be too specific. We don't know who's listed, and if we just say a truck, then you're going to have a duty to defend? Absolutely, and that's actually one of the points that I wanted to make, so thank you for the nice segue. That argument, even setting aside the possibility for deliberate mischief, for the most part when plaintiffs are suing the driver of a truck, they're not pleading their complaint, alleging negligence. They're not including facts that are relevant whatsoever to who covers and who provides insurance for the vehicle. So virtually no complaint is going to set forth the relevant factors to determine who is or is not an insured under the, it's just not something that you plead that the other guy hit me because he wasn't looking where he was going. You don't plead he hit me in a car that was owned by a Chicago truck leasing under, you know, two different policies of insurance. Mr. Judge is arguing that you cannot deny a defense unless the complaint clearly on its face Every single automobile insurer in the state of Illinois would owe a defense in every single motor vehicle accident case in the state unless the complaint actually alleged specific facts that allowed them to determine from the face of the complaint who was the insurer and who wasn't. In this case, all we have is that Kugel, or Pangallo driving for Kugel, is driving a certain motor vehicle. That doesn't exclude the possibility of coverage for any automobile insurer in the state of Illinois. So if we accepted that argument, the scope of an insurer's duty to defend just becomes astronomical. And I think actually the constant products case that counsel referred to provides some really excellent language directed to that idea. At the very last paragraph of the decision, the court is talking about this idea that simply because the insurance carrier was a primary policy that they argued that coverage would still be limited to those entities qualified as insured under the policy and that requiring the insurer to provide a defense to everybody driving a vehicle under an owner's policy without having conducted the investigation as a permissive or non-permissive user would make it increasingly difficult for carriers to accurately underwrite risks and assess proper premiums when potentially all drivers, whether they have permission or not, would have to be covered. This case is analogous because under the theory that plaintiffs are offering, potentially all automobiles would have to be covered unless the allegations of the complaint clearly disclose that it was a non-covered vehicle. Insurance companies would not be able to assess the risks, underwrite the risks related to our policies because they'd have no idea how many vehicles Chicago truck leasing owns that aren't on its scheduled policies but under the rationale that's been offered here, they'd have to provide coverage to every single one of those cars. And that's simply not the law. We can affirm the trial court based on any reason of hearing in the record and I think I raised the issue about this ability to add vehicles on that weren't previously listed. Is there anything in the record to show one way or the other how that can be resolved that you're aware of? Again, I'm not aware of it. Today literally at oral argument is the first time I believe that plaintiffs have ever raised that argument. And while the court can affirm on any basis that's apparent from the record, arguments that have not been raised below and particularly that have not been raised in the appellate briefs are considered forfeited and are not to be raised before this court. So I think it would be fundamentally unfair to us to be called to answer an argument that's been raised for the first time in an oral argument. I guess the final point that I would like to make is that counsels made references to the February 7th denial letter and to Kevin Gray's deposition testimony. And I just do want to make sure it's clear for the record that that February 7th, 2011 letter is a letter denying coverage to Chicago truck leasing on the third party complaint. It is not a denial letter directed to Kugel and Pangallo in this case. Just so that it is clear for the record. I will also note and counsel did acknowledge that that letter references the things that Kevin Gray looked at outside the complaint was this claim that the vehicle was leased to Kugel, that it was under a lease. Well, that was not in fact a true fact. It was an unpleaded fact, but it was not true. And it was a fact that was provided erroneously to Philadelphia from the underlying insurers. To the extent that Kevin Gray has admitted in his deposition that he thinks he probably looked at things outside the record and whether or not Illinois allows him to look at matters in his investigative file beyond the record, this isn't a test to see how well Kevin Gray understands Illinois law. This is essentially a multiple choice test. If he picked denial of defense because it happened to be number C on his multiple choice test, all that matters is if he was right or wrong. It doesn't matter how he got there. It doesn't matter if he didn't understand Illinois correctly. What matters is if when we understand Illinois correctly, if answer C was in fact the correct answer. And I would submit, based on the arguments I've presented, that it was in fact the correct answer. And I would ask this Court to reverse the judgment and remand to the trial court. Thank you. Thank you. All right. Very well. This matter will be taken under advisement. I commend the party. It was well argued. This case was well argued and well briefed. And the order will be issued in due time. Thanks. Thank you.